1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:, | CASE NO. 08CV0256-LAB (AJB) |
| ROLAND PAUL DAIGLE, | Bankruptcy No. 02-10222-M7 |
| Debtor. | **ORDER AFFIRMING BANKRUPTCY COURT'S SUMMARY ADJUDICATION RE POST-PETITION TRANSFER OF INTEREST IN REAL PROPERTY** |
| ROLAND PAUL DAIGLE, | |
| Appellant, | |
| vs. | |
| JAMES KENNEDY, | |
| Appellee. | |

Roland Daigle ("Daigle" or "Debtor") and his wife, Audrey Daigle, appeal from a January 8, 2008 Bankruptcy Court Order granting partial summary judgment to the bankruptcy trustee, James Kennedy ("Trustee"), on his First Amended Complaint alleging unauthorized post-petition transfer of interest in real property, fraudulent transfer, and seeking declaratory relief, turnover, accounting, and authority to sell the property.[1] That

---

[1] The transcript of the hearing in the Bankruptcy Court substantiates the Order under review in this appeal does not entirely dispose of the Trustee's adversary proceeding. Only the post-petition transfer issue of law, as "one side" of the proceedings, is before this court. The Bankruptcy Court noted: "I think [debtor's counsel] would be anxious to get a final order here. To the extent his client thinks the court has got it wrong, he can seek appellate [review] . . ." Lodg. Exh. I, 24:19-25-10. That court continued, addressing the Trustee's attorney: "So work it out with [debtor's counsel] and then we'll continue with [*sic*] the other matter until we get that resolved." Id. at 25:12-14.

Order avoided an interspousal transfer of property[2] via Quitclaim Deed on grounds it was a post-petition transfer under California's recording statute, and divested both Roland Daigle's and Audrey Daigle's interests in the property in favor of the Trustee, pursuant to 11 U.S.C. § 549 (addressing a trustee's powers to avoid a transfer of property after the commencement of a bankruptcy case when the transfer is not authorized under 11 U.S.C. § 303(f) or 11 U.S.C. § 542(c)).[3]  The court confines its review to the dispositive issues arising from the Daigles' disagreement with the Bankruptcy Court's findings:  (1) the property was part of the bankruptcy estate; and (2) it was transferred post-petition, justifying avoidance of the transfer.[4]  Opening Brief 7:13-15.  Pursuant to Civil Local Rule 7.1(d)(1), the court finds the issues presented appropriate for decision on the papers and without oral argument.  For the reasons discussed below, the partial summary judgment is **AFFIRMED**.

## I.    BACKGROUND

By Order dated October 24, 2006, the Bankruptcy Court approved the Trustee's motion to reopen the Debtor's case, which had been closed more than three years earlier. The Trustee's Complaint initiated an adversary proceeding against the Daigles and another

---

[2]   The Daigles contend the Bankruptcy Court should have addressed the interspousal nature of the transfer.  Opening Brief 1:22-23.  They note:  "2.  There's absolutely no finding [by the Bankruptcy Court] as to the Community Property aspects of the real estate interest."  Id. at 4:16. They argue:  the judgment of the Bankruptcy Court "swept, without comment, the independent interests of Audrey Daigle into the judgment of the Court, . . . without any legal or factual foundation, and the rationale of the court . . . does not necessarily bootstrap that interest into the bankruptcy estate."  Opening Brief 6:5-16 (without seeking from this court any particular finding on the issue); By the Daigles' own acknowledgment, the Bankruptcy Court did not address the property characterization in the Order under review in this appeal.  Accordingly, this court does not reach such aspects of the parties' dispute as whether 50% or only 25% should be the interest subject to vesting in the Trustee. That question needs to be addressed by the Bankruptcy Court in the first instance and is not relevant to the purely legal perfection of title question dispositive of this appeal.  Similarly, the Trustee contends the question whether property held in joint tenancy is community property is a question of fact, but that is not an issue before the court in this appeal.  See Appellee's Brief 2:23-25.

[3]   Neither of those sections applies to the circumstances of this case.  One pertains to continued operation of a business after an involuntary bankruptcy case is opened (11 U.S.C. § 303(f)), and the other pertains to actions by entities other than the trustee who act without actual notice or knowledge of the bankruptcy case when acting in good faith (11 U.S.C. § 542(c).

[4]   No evidence is before the court on Daigles' inchoate suggestion the Quitclaim Deed was supported by consideration or their conclusion of law asserting the Debtor was not required to report that transfer on his Bankruptcy Schedules or Statement of Financial Affairs.  This court finds it need only reach the legal issues surrounding the effect of failure to record the deed until after he filed his bankruptcy petition.

1   couple, Robert M. Caruso and Naydia E. Caruso, who own the other 50% interest in the real

2   property at issue, located in Connecticut.  The Trustee's Complaint sought declaratory relief

3   regarding the post-petition status of the Quitclaim Deed transfer of a joint tenancy interest

4   with his wife from Mr. Daigle to Mrs. Daigle as Trustee of a Real Estate Trust, an accounting,

5   and turnover against the Debtor and the Debtor's wife, individually and as Real Estate Trust

6   trustee.  The Trustee filed an Amended Complaint ("FAC") adding two additional claims

7   seeking avoidance of the transfer as allegedly fraudulent (presented as based either on 11

8   U.S.C. § 548, or on the fraudulent transfer laws of California, or on the fraudulent transfer

9   laws of Connecticut),[5] and authority to sell the real property pursuant to 11 U.S.C. § 363(h).

10         The Quitclaim Deed at issue appears as Exhibit 6 to the Declaration of William P.

11  Fennell, Esq. provided as Exhibit C in support of the Appellee's Brief.  The one-page

12  instrument recites:

13              THIS QUITCLAIM DEED, Executed this 18th day of May
                2001 by first party, Roland P. Daigle, whose address is [in
14              Oceanside, California] to second party, Real Estate Trust,
                Audrey A. Daigle, Trustee whose address is [the same
15              Oceanside, California address].

16              WITNESSETH, That the said first party, for good
                consideration and for the sum of $0.00 said first party, the
17              receipt whereof is hereby acknowledged, does hereby remise,
                release, and quitclaim unto the said second party forever, all the
18              right, title, interest and claim which the said first party has in and
                to the following described parcel of land, and improvements and
19              appurtenances thereto in the city of Norwich, Connecticut, State
                of Connecticut [followed by an address and a citation to a
20              volume and page].

21              IN WITNESS WHEREOF, The said first party has signed and
                sealed these presents the day and year first above written
22              [followed by a signature purporting to be that of Ronald P.
                Daigle].
23
                The second page of Exhibit 6 to Exhibit C is captioned "CALIFORNIA ALL-PURPOSE
24
    ACKNOWLEDGMENT" by a notary public, and recites on October 14, 2002, in San Diego,
25
    California, Roland P. Daigle personally appeared before her and produced evidence he was
26

27  _____

28       [5]  The parties do not similarly present a choice of law issue on the recordation statute to be
    applied to this case.  Instead, the parties as well as the Bankruptcy Court apply California law, even
    though the real property in question is located in Connecticut.  *See* statutory comparison, below.

1  the person whose name appeared on the attached Quitclaim Deed bearing a document date

2  of May 18, 2001 and acknowledged his signature executing that instrument.

3        Daigle filed his Chapter 7 Petition for bankruptcy protection on October 18, 2002.

4  Daigle's associated Statement of Financial Affairs listed no interest in real property and no

5  transfers, whereas the Trustee now contends:  "At the time Debtor filed bankruptcy, Debtor

6  had a fee interest in the real property and improvements thereon in an 8 unit apartment

7  condominium complex, located" in Norwich, Connecticut (the "Real Property").  FAC ¶ 11.

8   Mr. Daigle disputes he had an interest in the Real Property at the time of his bankruptcy

9  filing.[6]  He represents he transferred his interest in it to "Real Estate Trust, Audrey A. Daigle,

10 Trustee" by the Quitclaim Deed dated May 18, 2001, seventeen months before he filed his

11 Chapter 7 Petition in this judicial district, despite the October 14, 2002 notary

12 acknowledgment date of the Quitclaim Deed just four days before he filed his Chapter 7

13 petition.  FAC ¶ 15.  There is no dispute the deed was not recorded until October 22, 2002,

14 four days after he filed the petition.  FAC ¶ 16.  The Debtor received a bankruptcy discharge

15 on March 3, 2003.  FAC ¶ 7.  Nearly three years later, in January 2006, Audrey A. Daigle by

16 Quitclaim Deed transferred the Real Estate Trust's interest in the Real Property back to the

17 Debtor and herself, to be held again personally as joint tenants.[7]  FAC ¶ 17.

18       In mid-2006, nearly three years after Mr. Daigle's bankruptcy was discharged and

19 several months after Audrey Daigle had transferred their interests in the Real Property from

20 the Real Estate Trust back to herself and her husband, a Connecticut lawyer contacted the

21 Trustee in the course of negotiating the purchase of the Real Property on behalf of his client.

22 Appellee Brief, Exh. B, Fact Nos. 14-15.   The bankruptcy Trustee in these California

23 _____

24       [6]  The acquisition history and transfers, prior to the Quitclaim Deed at issue here, appear at
   Undisputed Fact Nos. 7-9.  Appellee Brief Exh. B, p. 2.  Daigle and Robert M. Caruso had purchased

25 the Real Property in January 1984, then both purchasers had transferred their interests to
   themselves and their wives, respectively, as joint tenants through August 1985 Quitclaim Deeds.  Id.

26       [7]  Audrey Daigle's January 9, 2006 Quitclaim Deed, executed as "Audrey A. Daigle, Trustee
   -- Real Estate Trust," bears a notary acknowledgment on the same date and page and is provided

27 as Exhibit 7 to Appellee's Exhibit C Fennell Declaration.  The "first party" is recited in that Quitclaim
   Deed to be "Real Estate Trust, Audrey A. Daigle, Trustee."  The "second party" is recited to be

28 "Roland P. Daigle and Audrey A. Daigle as Joint Tenants."  Again, the "consideration" is summarily
   recited to be "good" and the sum is recited to be $0.00.

1   proceedings had no knowledge of the existence of the Connecticut Real Property or any

2   interest the Debtor had in it until then.   That information caused the Trustee to move in

3   October 2006 to reopen the Debtor's bankruptcy case and to file an adversary proceeding

4   to recover Daigle's interest in the Real Property for the benefit of the bankruptcy estate.  The

5   Daigles answered the Complaint in early December 2006.

6        The FAC became the operative pleading in July 2007.  The Trustee thereafter moved

7   for summary judgment.  By Order entered January 16, 2008, following a December 19, 2007

8   hearing on the record, the Bankruptcy Court granted summary adjudication of the title

9   transfer issues in favor of the Trustee, voided the Quitclaim Deed recorded with the Norwich

10  Town Clerk on October 22, 2002, and vested "[t]he Daigles' 50% interest" in the Real

11  Property in the Trustee as property of the Debtor's bankruptcy estate, also approving its sale.

12  Appellee's Brief, Exh. J.  That Order is the subject of this appeal.

13       This court restricts its ruling to the issues associated with the question of law whether

14  the Quitclaim Deed purporting to transfer the Debtor's interest in the Real Property to the real

15  estate trust was effective to divest him of his interest before the bankruptcy estate's interest

16  could attach.   There is no dispute the deed was not recorded until after Daigle file his

17  bankruptcy petition.  The court construes the facts in the light most favorable to the non-

18  moving party, as it must when applying summary judgement standards, and assumes for

19  purposes of this appeal Daigle executed and delivered the Quitclaim Deed in May 2001,

20  seventeen months before he filed his Bankruptcy petition, rather than on the date of the

21  notary's entry just days before that event.  The Daigles argue transfer was effective upon the

22  Debtor's execution of the Quitclaim Deed, irrespective of the date the deed was recorded.

23       Relying on In re Brooks-Hamilton, 348 B.R. 512 (Bankr. N.D.Cal. 2006), 11 U.S.C.

24  § 544(a)(3), 11 U.S.C. § 549, and CAL CIV. CODE § 1214, the Trustee contends:  the transfer

25  of Daigle's interest in the Real Property was unperfected at the time he filed for bankruptcy

26  because the Quitclaim Deed was not recorded until after the petition was filed; under

27  California law, an unrecorded transfer of real property is void as against a bone fide

28  purchaser who has perfected his interest in real property; a grantee's unperfected interest

1    in property is subject to avoidance by the bankruptcy trustee in the exercise of his "strong-

2    arm" powers  under 11 U.S.C. § 544(a)(3) as a hypothetical bone fide purchaser; and

3    consequently, the post-petition timing of the recording transaction at issue here renders it

4    subject to avoidance pursuant to 11 U.S.C. § 549 through the Trustee's exercise of his

5    "strong-arm" authority.  MSJ Mot. P&A 5:14-20, Appellee's Brief Exh. A.

6         Bankruptcy Judge James W. Meyers heard the motion on December 18, 2007.  His

7    two-page Order And Judgment On Trustee's Motion For Summary Judgment memorializes

8    both the Daigles and their counsel, Daniel J. Winfree, Esq., were present as well as counsel

9    for the Trustee.  The judge recites he considered the Trustee's motion and the written and

10    oral oppositions, then ordered:  "(1) The Trustee's Motion for Summary judgment is granted

11    against the Daigles and in favor of Trustee; (2) The Quitclaim Deed, Instrument No.

12    2002007100, recorded October 22, 2002 with the Norwich Town Clerk is void and of no force

13    or effect, pursuant to 11 U.S.C. § 549; (3) The Daigles' 50% interest in the real property

14    located at 531-545 Boswell Avenue, Norwich, New London County, Connecticut, . . . and all

15    improvements thereon, including but not limited to the 8 unit apartment/condominium

16    complex (collectively the "Real Property") shall hereinafter be vested with the Trustee as is

17    [*sic*] property of the above encaptioned bankruptcy estate. . . ."  Appellee's Brief, Exh. J.

18         The dispositive legal issue presented by this appeal is when does a transfer of

19    interest in real property occur so as to perfect title?  There is no dispute Daigle's bankruptcy

20    petition was filed October 18, 2002 in California, and the Quitclaim Deed was recorded

21    October 22, 2002 in the Connecticut county where the Real Property is located.  The Trustee

22    contends, and the Bankruptcy Court ruled, title transfers only upon the recording of the deed.

23    Under that interpretation, Daigle's Quitclaim Deed from Daigle was not perfected until after

24    the automatic stay attached, qualifying as an impermissible, and thus avoidable, post-petition

25    transfer.  The Daigles contend  recordation does not control the legal conveyance of title, but

26    merely establishes priority.[8]  Under that interpretation, the Debtor's interest in the Real

27

28       [8]  Priority questions are decided by imputing constructive notice of the contents of recorded
documents to a subsequent party, with the priorities among several interests in a parcel of real estate
determined primarily by the recording dates of the various documents evidencing the respective

     08CV0256

1  Property was transferred seventeen months prior to his bankruptcy filing, when Daigle

2  represents he executed the Quitclaim Deed, so the Real Property cannot properly be

3  characterized as part of the bankruptcy estate, in which case the Bankruptcy Court's

4  adjudication of the issue must be reversed.

5  **II.    DISCUSSION**

6      **A.    Legal Standards**

7          **1.    Summary Judgment**

8          A motion for summary judgment under may be granted if the pleadings and evidence

9  show there is no genuine issue of material fact and the moving party is entitled to judgment

10 as a matter of law.  FED. R. CIV. P. ("Rule") 56(c); Celotex Corp. v. Catrett, 477 U.S. 317

11 (1986);  Anderson v. Liberty Lobby, Inc. 477 U.S. 242(1986).  Rule 56 is made applicable

12 to adversary proceedings in Bankruptcy Court by FED. R. BANKR. P. 7056.  In re Rogstad,

13 126 F.3d 1224, 1227 (9th Cir. 1997).  A court applying Rule 56 standards considers the

14 evidence in the light most favorable to the non-moving party.  United States v. Diebold, inc.,

15 369 U.S. 654, 655 (1962).  If issues of material fact are disputed, summary judgment may

16 not be entered because a court applying Rule 56 standards may not weigh conflicting

17 evidence, may not make factual findings, and may not make credibility determinations, as

18 those are determinations for the trier of fact.  Anderson, 477 U.S. at 249; Diebold, 369 U.S.

19 at 655.  In the absence of triable issues of fact, the court may enter summary judgment as

20 a matter of law.  Summary judgment must be entered "if, under the governing law, there can

21 be but one reasonable conclusion as to the verdict." Anderson, 477 U.S.  at 250-251.

22          **2.    District Court Review Of Bankruptcy Court Orders**

23          "The district courts of the United States shall have jurisdiction to hear appeals (1) from

24 final judgments, orders, and decrees" of bankruptcy judges.  28 U.S.C. § 158(a).  The district

25 _____

26 interests.  Priority considerations apply only to known interests or interests that could have been
known upon reasonable inquiry.  Necessarily, knowledge of unrecorded conveyances cannot be

27 imputed to a person who acquires an interest or lien in real property in good faith and for value and
without actual notice of an unrecorded interest.  Such a person receives the interest or lien free and

28 clear of prior unknown interests, as long as that *bone fide* purchaser records his or her interest.  The
*bone fide* purchaser has priority in that circumstance over all prior unrecorded and unknown interests.
Miller & Starr, 5 Cal. Real Est. § 11.3 (3d ed.).

1   court's standard of review is the same as the standard used by circuit courts reviewing
2   district court decisions, *i.e.* factual findings are reviewed for clear error, and conclusions of
3   law are reviewed *de novo*.    *See* In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997); In re
4   Southern Cal. Plastics, Inc., 165 F.3d 1243, 1245 (9th Cir. 1999).   A grant of summary
5   judgment is reviewed *de novo* because the result is a conclusion of law.  In re Incomnet, Inc.,
6   463 F.3d 1064, 1068 (9th Cir. 2006).   The reviewing court will affirm a grant of summary
7   judgment only if it appears from the record, viewing all evidence and factual inferences in the
8   light most favorable to the nonmoving party,  there are no genuine issues of material fact and
9   that the moving party is entitled to judgment as a matter of law.   In re Yarbrow, 150 B.R. 233,
10  236 (B.A.P. 9th Cir. 1993).   An order granting summary judgment may be affirmed on any
11  ground supported by the record.   In re Olson, 36 F.3d 711, 73 (9th Cir. 1994).

12              **3.    Recording Statutes And Choice Of Law**

13              When a transfer of property occurs within the meaning of the Bankruptcy Code is a
14  question of law reviewed *de novo*.   In re Roosevelt, 87 F.3d 311, 315 (9th Cir.), *amended*
15  *by* 98 F.3d 1169 (9th Cir. 1996).[9]  "Transfer" is defined as "each mode, direct or indirect,
16  absolute or conditional, voluntary or involuntary, of disposing of or parting with -- (i) property;
17  or (ii) an interest in property. . . ." 11 U.S.C. § 101(54)(D) (1998).  "It is well established that,
18  under bankruptcy law, perfection of an interest in property is considered a transfer separate
19  and apart from the transfer of title." In re Garner, 208 B.R. 698, 699 (Bankr. N.D.Cal. 1997),
20  *citing* In re Williams, 124 B.R. 311, 315 (Bankr. C.D. Cal. 1991) (a foreclosure sale of
21  debtor's home that occurred before the filing of a Chapter 7 bankruptcy was not perfected
22  until after the debtor's filing, resulting in the debtor's successful avoidance of the sale).

23

24          [9]   The In re Roosevelt court determined that until a quitclaim deed was recorded, the marital
25  transmutation was not effective against creditors without notice, and therefore the property (a
    personal residence) was potentially subject to the reach of the husband's creditors.  In re Roosevelt,
26  176 B.R. at 538 (nonetheless holding the perfection of the transfer through recordation did not
    constitute a further transfer of the property, finding recordation by a transferee is not a transfer by
27  the debtor).   Noting that different sections of the Bankruptcy Code operate to protect different
    interests, the court observed 11 U.S.C. § 548 (addressing avoidance of fraudulent transfers of
28  property or obligations) exists to protect and conserve the debtor's estate for his creditors.  Id.
    Similarly, 11 U.S.C. § 549 address the trustee's avoidance powers over post-petition transfers,
    presumably to advance the same policy.

1    "To determine whether a transfer has occurred, [a bankruptcy court] looks at state

2    law."  In re Roosevelt, 176 B.R. 534, 537 (B.A.P. 9th Cir. 1995), *citing* Butner v. United

3    States, 440 U.S. 48, 55, 54, 55 (1979) (adopting the majority view among the circuits to hold

4    the determination of property rights in the assets of a bankrupt's estate is decided under

5    state law, noting "[u]niform treatment of property interests by both state and federal courts

6    within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent

7    a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy,'" and

8    rejecting the minority approach recognizing undefined considerations of equity as a basis for

9    adopting a federal rule overarching property interests created and defined by state law)

10   (citation omitted).

11        Even though the Real Property at issue here is located in Connecticut, the parties and

12   the Bankruptcy Court applied California law regarding the conveyance of interests in real

13   property and perfection of title.  The Debtor's Quitclaim Deed was executed in California,

14   was intended to convey the California debtor's interest in the property to his California

15   resident wife as trustee of a real estate trust presumably established in California, and the

16   Chapter 7 bankruptcy petition was filed in this judicial district, all circumstances this court

17   presumes explain the choice of California law as governing the parties' conveyance disputes.

18   While disposition of the bankruptcy estate logically applies the law of the state where the

19   debtor is located, nevertheless this court has verified whether any conflict of law issue

20   associated with real property transactions exists between California law and Connecticut law

21   as pertinent in these circumstances that could affect the title transfer timing analysis.

22        The effect and validity of conveyances of real property normally are examined under

23   *lex loci rei sitae* principles -- law of the state where the real property is located.[10]  California's

24

25        [10]   *See* 16 Am.Jur.2d Conflict of Laws § 33 (footnotes omitted):  "It is a universal principle
     that real or immovable property is exclusively subject to the laws of the country or state within which
26   it is situated, and no interference with it by any other sovereignty can be permitted.  Therefore, the
     *lex loci rei sitae*, the law of the place where it is situated, governs all matters concerning the title and
27   disposition of real property and whether any interests in the property can be gained or lost.  This
     general principle includes all rules which govern the . . . . transfer of such property and the validity,
28   effect, and construction of . . . conveyances.  [¶]  The *lex loci rei sitae*, as a general principle, governs
     in the case of any attempted transfer, whether it is voluntary or involuntary."  *See also* 6 Am.Jur.2d

1   is a "race-notice" recording act state, and Connecticut is a modified "notice" recording act

2   state.  *See* Recording Acts Guide, 80 University of Detroit Mercy Law Review (Fall 2002)

3   (WL 80 UDTMLR 91); *see also* Real Estate Records, 43 Gonzaga Law Review (2007-2008)

4   (WL 43 GONZLAR 5) ("Real Estate Records") at *26 (the distinguishing feature of the

5   "notice" statutes "is that in a contest between competing grantees, the law subordinates a

6   grantee who fails to record to a later purchaser who was unaware of the first conveyance").

7   Connecticut's "notice" statute is in a form different from other notice statutes because it

8   declares that "an unrecorded instrument is not enforceable against later grantees but do not

9   expressly state that such later grantees would be bound by the prior conveyance if they had

10  actual knowledge of it," although it is construed to deny priority to those with actual notice.

11  Real Estate Records at *26-27

12       Nevertheless, the law of California and the law of Connecticut appear to coincide on

13  the narrow issue before this court:  a conveyance of interest or title in real property is not

14  perfected until the instrument is recorded.  Connecticut General Statute ("CGSA") § 47-10(a)

15  requires recordation to perfect title: "No conveyance shall be effectual to hold any land

16  against any other person but the grantor and his heirs, unless recorded on the records of the

17  town in which the land lies. . . .  *See also* CGSA  § 47-14j, which recites in pertinent part:

18  "Any change in the nature of the interests held by joint tenants which could be effected by

19  a conveyance . . . to a stranger may be effected by an instrument executed with the

20  formalities required for deeds by the joint tenant or tenants whose interests are involved,"

21  but "[t]hat instrument **shall not be effective until it has been recorded on the land**

22  **records of the town in which the real estate is located**."  Applying Connecticut law, it

23  seems clear Daigle's unrecorded Quitclaim Deed would not be construed as having

24  perfected the title/interest change on the date recited in the deed as against a *bona fide*

25  purchaser.

26

27  Assignments For Benefit Of Creditors § 138 (footnotes omitted): "An assignment made under a state
    insolvency or bankruptcy statute cannot operate on any property except that which is within the state

28  enacting the statute; accordingly the law of the assignor's domicil is inapplicable to assigned property
    found outside the jurisdiction.  With respect to property located in other jurisdictions, an involuntary
    assignment for creditors is given only the effect permitted by the laws thereof. . . ."

1    California's recordation statute provides, in pertinent part:

2            Perfection of an interest in California real property does not
        occur until recordation of the document with the county recorder.
3        Under California's race-notice recording statute, an unrecorded
        conveyance of real property is void as against any *bone fide*
4        purchaser for value whose conveyance is recorded first.

5    In re Williams, 124 B.R. at 315, *citing, inter alia*, CAL. CIV. CODE §§ 1213-15 (West 1982).

6            A "conveyance" of real property "embraces every instrument in writing by which any

7    estate or interest in real property is created, alienated, mortgaged, or incumbered, or by

8    which the title to any real property may be affected, except wills." CAL. CIV. CODE § 1215.

9    "Every conveyance of real property. . . acknowledged or proved and certified and recorded

10   as prescribed by law from the time it is filed with the recorder for record is constructive notice

11   of the contents thereof to subsequent purchasers. . . ." CAL. CIV. CODE § 1213.  "Every

12   conveyance of real property. . . is void as against any subsequent purchaser. . . of the same

13   property, or any part thereof, in good faith and for a valuable consideration, whose

14   conveyance is first duly recorded, and as against any judgment affecting the title, unless the

15   conveyance shall have been duly recorded prior to the record of notice of action."[11] CAL. CIV.

16   CODE § 1214.  "An unrecorded instrument is [only] valid as between the parties thereto and

17   those who have notice thereof." CAL. CIV. CODE § 1217.

18           "Under a race-notice recording act, the party who wins the race to the courthouse to

19   record a conveyance of real property obtains superior title unless the winner has notice of

20   the conveyance to the second finisher in the race." In re Duncombe, 143 B.R. 243, 245

21   (Bankr. C.D.Cal. 1992).  "[E]very conveyance of real property" must "be recorded in order

22   to be valid against a subsequent purchaser or mortgagee of the same property, who in good

23   faith and for valuable consideration records first." In re Heinig, 64 B.R. 456, 458-59 (Bankr.

24   S.D.Cal. 1986).  Connecticut recordation law appears to parallel California's on this point.

25

26           [11]  However, an exception applies.  The rights of a subsequent purchaser who records do
     not take priority over those of one in clear and open possession of real property, because such
27   possession "generally constitutes constructive notice" of the rights of the party in possession.  In re
     Heinig, 64 B.R. 456, 458-59 (Bankr. S.D.Cal. 1986) (finding the trustee did not take priority over the
28   rights of the debtor's ex-wife who was in clear and open possession of the subject property as of the
     commencement of the bankruptcy proceeding), *citing* CAL.CIV. CODE § 1214.

### 4.    Consequences Of Unauthorized Post-Petition Transfers

An automatic stay is effective upon the filing of a bankruptcy petition.[12]  11 U.S.C. § 362(h).  With limited exceptions, the property of the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case," and its creation prohibits any act to obtain possession or to exercise control over property of the estate without approval. 11 U.S.C. § 541(a)(1).  "The automatic stay renders void any act . . . to exercise any control over property of the bankruptcy estate." In re Brooks-Hamilton, 348 B.R. at 515 n.1.  A stay remains effective with respect to acts against property until it is either affirmatively lifted by the court or the property is no longer part of the estate. Any other act is stayed until either the case is closed or dismissed or, in the case of an individual debtor, until a discharge is either granted or denied.  11 U.S.C. § 362(c); In re Weston, 110 B.R. 452, 456 (Bankr. E.D.Cal. 1989); In re Stucka, 77 B.R. 777, 782 (Bankr. C.D.Cal. 1987).  Actions taken in violation of the automatic stay are void, not simply voidable. In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).

A bankruptcy Trustee is deemed a *bona fide* purchaser as a matter of law, with powers to set aside any transaction that could be avoided by a *bona fide* purchaser under state law, although it may be subject to the unrecorded rights of a person in possession. *See* In re Weisman, 5 F.3d at 420; 11 U.S.C. § 544(a)(3) (the "strong arm" clause);[13] *see also* In re Duncombe, 143 B.R. at 245.  That section "vests in the trustee the status of bona fide purchase [sic] of real property against any transfer that could have been but was not perfected. . . ." In re Heinig, 64 B.R. at 458 (citations omitted).

//

---

[12]  "Except as provided in subsection (b) . . ., a petition . . . operates as a stay . . . of – . . . (3) any act to . . . exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; . . . ." 11 U.S.C. § 362(a).

[13]  "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by– . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. . . ." 11 U.S.C. § 544(a)(3).

08CV0256

1    A Chapter 7 bankruptcy trustee has the power to avoid any unauthorized transfer of

2  property of the estate that occurs after commencement of the case, with codified exceptions

3  not pertinent here.[14]  11 U.S.C. § 549.[15]   *See* In Re Brooks-Hamilton, 348 B.R. at 522.

4  Postpetition attempts to perfect a transfer of property generally do not preclude the

5  avoidance of a transfer which is otherwise avoidable.   Title 11 U.S.C. § 362(a) addresses

6  actions rendered void when performed in violation of the automatic stay, even if a party acted

7  in good faith and without knowledge of the bankruptcy and was harmed by the action

8  declared void on the basis of an automatic stay violation.  *See discussion at* In re Schwartz,

9  954 F.2d at 573-74 (harmonizing 11 U.S.C. § 549(c) and 11 U.S.C. § 362:  "Congress did

10  not draft subsection 549(c) to demonstrate that violations of the automatic stay are merely

11  voidable; Congress drafted subsection 549(c) to protect good faith purchasers where the

12  sale would otherwise be subject to avoidance under section 549 or void under section 362").

13  "The law in this circuit is that violations of the automatic stay are void and that section 549

14  applies to transfers of property which are not voided by the stay."  Id. at 574 (finding the

15  general proposition is "that sections 362 and 549 usually apply to a different set of

16  transactions").  When all the conditions of Title 11 U.S.C. § 363(h) are met, a Chapter 7

17  Trustee can sell the estate's and co-owners' interests in such recovered real property for the

18  benefit of creditors.[16]

19

20    [14]   A trustee's right to avoid unauthorized post-petition transfers is subject to the exception
the Trustee may not avoid "a transfer of real property **to a good faith purchaser** without knowledge

21  of the commencement of the case and **for present fair equivalent value** unless a copy or notice
of the petition **was filed**, where a transfer of such real property may be recorded to perfect such

22  transfer, **before such transfer is so perfected** that a bone fide purchaser of such property, against
whom applicable law permits such transfer to be perfected, could not acquire an interest that is

23  superior to the interest of such good faith purchaser." 11 U.S.C. § 549 (emphasis added).  Based
on the record before this court, no such status can be imputed to Mrs. Daigle as trustee of the real

24  estate trust into which Daigle purports to have transferred his interest in the Connecticut property.

25    [15]   "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a
transfer of property of the estate-- (1) that occurs after the commencement of the case; and (2)(A)

26  that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under
this title or by the court."  11 U.S.C. § 549(a).

27

28    [16]   The issues associated with the Trustee's FAC request for permission from the Bankruptcy
Court to sell the Real Property, including the Daigles' contentions regarding the appropriate
percentage of their respective ownership interests subject to such a proceeding, are not before the

**B.    The Debtor's Transfer Was Not Perfected Before The Stay Was Triggered**

Construing the facts in the light most favorable to the non-moving parties, the court assumes for purposes of this decision that Daigle's conveyance of his interest in the Connecticut Real Property to the real estate trust controlled by his wife was executed May 18, 2001, seventeen (17) months before the bankruptcy proceedings were initiated, rather than on the notary's signature date of October 14, 2002, four days before Daigle filed his Chapter 7 petition.  It is undisputed the conveying Quitclaim Deed was not recorded until four days after Daigle initiated the bankruptcy action.  As a matter of law, the filing of the petition created the bankruptcy estate and triggered the automatic stay.  As discussed above, the Trustee is empowered to avoid an unauthorized post-petition transfer and to recover the property for the bankruptcy estate.

The Bankruptcy Court determined Daigle's attempted transfer of his interest in the Real Property from the joint tenancy interest in the Real Property he and his wife had to the Audrey A. Daigle Real Estate Trust was a post-petition transaction, based on the October 22, 2002 date that Quitclaim Deed was recorded compared to the October 18, 2002 Chapter 7 petition filing date.   The court found as a matter of law the act that transferred legal title as against all but the parties to the conveyance was the recordation.   The Bankruptcy Court then applied 11 U.S.C. § 549 to that post-petition transaction to decide the transfer is avoidable.  When 11 U.S.C. § 549 applies, a debtor's recording of a deed affecting title in property can be set aside under the Trustee's avoidance powers as an unauthorized transfer, in which case the debtor's interest in the property transferred becomes the property of the bankruptcy estate.  This court reaches the same result as a matter of law after *de novo* review.

The Daigles dispute the characterization of the recordation date as the date title transferred.  They rely on on Lawler v. Gleason, 130 Cal.App.2d 390 (1955) and Haye v. United States, 461 F.Supp. 1168, 1172 (C.D. Cal. 1978) for the proposition, without

court in this appeal.  In addition, the matter of the effect on the Caruso co-owners' interest in the Real Property is a matter also reserved for other proceedings in the Bankruptcy Court.

1  elaboration, "the recordation of a device is exclusively used to establish priority, <u>but has</u>
2  <u>nothing at all to do with the conveying of title</u>." Reply 2:17-22. They characterize CAL. CIV.
3  CODE § 1213 as providing the "recording of the deed is merely notice of that which had
4  occurred previously, thus not creating a new transfer." Mot. 8:27-9:2. However, the <u>Lawler</u>
5  case was an action to quiet title decided under a redemption statutes in circumstances
6  distinguishable on the law and the facts, and a subsequent case disapproved portions of that
7  decision. *See* <u>Call v. Thunderbird Mortg. Co.</u>, 58 Cal.2d 542 (1962). The issues in <u>Lawler</u>
8  arose in the context of establishing priority associated with attempted redemption after an
9  execution sale of property applying  CAL. CODE CIV. P. § 701, and the opinion does not
10  reference CAL. CIV. CODE § 1213 at all. The <u>Haye</u> case involved a suit to quiet title and to
11  cancel a federal tax lien, citing <u>Lawler</u> for the proposition quoted above, but in the context
12  of marketability of title, holding "that a title is 'unmarketable' has nothing whatsoever to do
13  with its validity as against subsequent purchasers without notice, and decided under federal
14  tax law). Neither case cites the California Civil Code sections at issue here. The <u>Haye</u> court
15  decided questions not presented here, *inter alia* whether the unmarketability of the
16  purchasers' title could affect their status as "purchasers." The <u>Haye</u> case was decided under
17  federal tax law, not state real property conveyance and recordation law, and <u>Lawler</u> likewise
18  did not apply the statutes at issue here. Moreover, perfection of an interest in property
19  under bankruptcy law "is considered a transfer separate and apart from the transfer of title."
20  <u>In re Garner</u>, 208 B.R. at 699.

21      "A transfer of an interest in real property occurs when a deed is executed and
22  delivered to the buyer, regardless of whether it is recorded."  <u>In re Brooks-Hamilton</u>, 348
23  B.R. 512, 523 n. 16, 517 (Bankr. N.D.Cal. 2006) (citation omitted) (deciding the question
24  "whether the Debtor effectively transferred his interest in the [real property at issue there] to
25  an irrevocable trust prior to filing for bankruptcy so that the [property] was not property of his
26  bankruptcy estate and could not effectively be sold by the Trustee). Although that isolated,
27  seemingly categorical statement of the law appears to support the Daigles' contention on
28  appeal, they fail to acknowledge the material qualification provided by that court:

> **However, *this transfer is only effective between parties to the transaction* and other[s] with notice of it. . . . A *second transfer* occurs when the deed is recorded. This transfer gives constructive notice to the world of the transfer effected earlier pursuant to the deed.**

Id. at 523 n. 16 (emphasis added), *citing* CAL. CIV. CODE §¶ 1217, 1213; In re Weisman, 5 F.3d 417, 420 (9th Cir. 1993) (under California law, every conveyance of real property must be recorded to be valid against a subsequent purchaser of property, but an *unrecorded instrument* is valid as between parties thereto and those who have notice of it); *see also* In re Bush, 356 B.R. 28, 38 (Bankr. S.D.Cal. 2006) (under California law, an *unrecorded judicial lien* could be avoided by Chapter 7 trustee pursuant to his avoidance powers as a hypothetical lien creditor and *bona fide* purchaser, as trustee could not be charged with constructive notice of the stipulation purportedly giving rise to the judicial lien); In re Snow, 201 B.R. 968, 975 (Bankr. C.D.Cal. 1996) (California statutes concerning results of recordation of interest in real property and impact on subsequent purchasers or mortgagees protect all subsequent purchasers and mortgagees against *unrecorded interests*); In re Van Ness Associates, Ltd., 173 B.R. 661 (N.D.Cal. 1994) (under California law, *every conveyance of real property must be recorded to be valid against subsequent purchaser of property*, but unrecorded conveyance is still valid as between the parties thereto and those who have notice of it); *see also* In re Heinig, 64 B.R. at 458 (trustee's status as *bona fide* purchaser of real property against any transfer that could have been, but was not, perfected is governed by applicable state law).

　　　The foregoing authority supports the Trustee's position a grantee's *unperfected* interest in property, such as Audrey Daigle's as Trustee for the Real Estate Trust under the Quitclaim Deed purporting to transfer the Debtor's interest in the Real Property from the Daigles as joint tenants to the Real Estate Trust, is subject to avoidance by the bankruptcy trustee in the exercise of his strong-arm powers as a hypothetical *bona fide* purchaser. 11 U.S.C. § 544(a)(3); *see* Brooks-Hamilton, 348 B.R. at 523 ("Under California law, an unrecorded transfer of real property is void as against a bona fide purchaser that has perfected his interest in real property"), *citing* CAL. CIV. CODE § 1214.

08CV0256

1    The Daigles' cited authority does not rely on California's "race-notice" statute, in

2  particular the portion that tracks the Connecticut "notice" statute regarding the effect of

3  failure to record a conveyance to perfect title before another intervening interest in the

4  property supersedes it.  Thus, even accepting the Daigles' contention that recordation is not

5  required to effectuate a conveyance of interest in real property, their argument fails when

6  applied to an unrecorded interest asserted against a recorded interest, including that of a

7  bankruptcy trustee as a hypothetical *bone fide* purchaser by operation of law.

8    The Daigles' effort to distinguish <u>Brooks-Hamilton</u> as "inapposite" to the facts

9  presented here is also ineffective.[17]   The <u>Brooks-Hamilton</u> case does present slightly

10 different facts associated with the execution of grant deeds purporting to transfer property

11 interests to purportedly irrevocable trusts, and involved deeds of  "highly suspect" integrity.

12 That court states the "*execution of*" post-petition grant deeds "are rendered unperfected and

13 thus subject to avoidance under" Section 544(a)(3).  Moreover, unlike here, the terms of the

14 trust to which the property interest was ostensibly transferred were before that court and

15 were material to the court's decision.[18]   Nevertheless, that court reinforced the principles

16 pertinent to the circumstances of this case with respect to the necessity of recordation to

17 prefect title.   *See* <u>In re Brooks-Hamilton</u>, 348 B.R. at 523 ("Under California law, an

18 unrecorded transfer of real property is void as against a bona fide purchaser that has

19 perfected his interest in the real property"), *citing* CAL. CIV. CODE § 1214.  Unrecorded

20 _____

21    [17]   As pertinent here, the Chapter 7 debtor in that case sued for a declaratory judgment that certain real property was not part of his bankruptcy estate because he had executed an irrevocable

22 declaration of trust and grant deeds purportedly transferring title and control of interest in particular real property to a family trust before filing for bankruptcy.  The bankruptcy trustee counterclaimed, among other things, for avoidance of the transfer as having been recorded post-petition, in violation

23 of the automatic stay.  Although the grant deeds were signed before the debtor filed his bankruptcy petition, they were recorded afterward.  The court found none of the documents the debtor attached

24 to his Complaint (two grant deeds and two declarations of trust reserving for himself as settlor extensive powers over the property transferred to the family trust) was sufficient to prevent the real

25 property from becoming property of the bankruptcy estate when he filed his bankruptcy petition.

26    [18]   "The Court will assume for purposes of this decision that the Grant Deeds were executed prior to the Debtor's bankruptcy case and effectively transferred the Warehouse to a trust.  The

27 question remains whether the effect of this transfer prevented the Warehouse from becoming property of the Debtor's bankruptcy estate when he filed his bankruptcy petition.  This depends on

28 the terms of the trust.  Neither of the two Declarations of Trust attached to the Complaint contain [*sic*] terms permitting such a construction." <u>In re Brooks-Hamilton</u>, 348 B.R. at 519.

08CV0256

1  conveyances of interests in real property are void as against any *bona fide* purchaser for

2  value whose conveyance is recorded first.   *See also* <u>In re Williams</u>, 124 B.R. 311, 315

3  (Bankr. C.D.Cal. 1991) (holding the recording of a bankruptcy notice precluded a foreclosure

4  sale purchaser who had not recorded from obtaining the protection of 11 U.S.C. § 549(c) and

5  the sale would be set aside, with the debtor restored to title but subject to all pre-petition

6  liens and encumbrances); *see also* <u>In re Marriage of Cloney</u>, 91 Cal.App.4th 429 (2001) (a

7  *bone fide* purchaser who acquires his or her interest in real property without knowledge or

8  notice of another's rights or interests in the property takes the property free of such unknown

9  interests); <u>In re Planned Protective Services, Inc.</u>, 130 B.R. 94, 98 (Bankr. C.D.Cal. 1991)

10  (in California, perfection of deed of trust occurs when the document is recorded in the office

11  of the county recorder, and prior to recordation, interest in real property is not effective

12  against intervening creditors).   The California recordation statute protects all subsequent

13  purchasers and mortgagees against unrecorded interests. *See* <u>In re Snow</u>, 201 B.R. 968;

14      Reviewing *de novo* the Bankruptcy Court's determination Daigle's transfer of his

15  interest in the Real Property did not occur until the Quitclaim Deed was recorded, this court

16  finds no error. As discussed above, the Daigles' argument that under California law,

17  conveyance of property occurs at the time that a deed is executed and delivered to the

18  transferee is correct only as between a transferor and the transferee and anyone else with

19  actual notice. The Daigles failed to perfect the transfer of the Debtor's interest in a manner

20  that defeats the unauthorized, post-petition nature of the essential "second transfer" through

21  recordation.   <u>In re Brooks-Hamilton</u>, 348 B.R. at 523 n. 16.   This court finds the Trustee

22  acquired, by operation of law, a perfected interest in the real property for the bankruptcy

23  estate before the interest purportedly transferred through the May 2001 Quitclaim Deed was

24  recorded, rendering it a post-petition transfer. As determined by the Bankruptcy Court, the

25  latter transfer accordingly is subject to avoidance under 11 U.S.C. § 544(a)(3). This result

26  would appear to be the same under Connecticut's notice recordation statute.   Summary

27  adjudication of that issue is **AFFIRMED**.

28  //

1

### C.    Equitable Tolling

2       The Bankruptcy Court's decision to reopen the case in October 2006 necessarily

3  entailed equitable tolling of the limitations period applicable to avoidance actions: "An action

4  or proceeding under this section may not be commenced after the earlier of – (1) two years

5  after the date of the transfer sought to be avoided; or (2) the time the case is closed or

6  dismissed."  11 U.S.C. § 549(d).  Whether the codified time limits within which to seek

7  avoidance of a debtor's unauthorized transfer of real property should be equitably tolled

8  presents a mixed question of law and fact, which is reviewed *de novo*.  *See* In re Bammer,

9  131 F.3d 788, 792 (9th Cir. 1997).  The Daigles contend the Bankruptcy Court made no

10  findings to support why theirs is a proper case for equitable tolling of the limitations period,

11  but without developing a factual or legal foundation to support this court's review of the issue.

12  Opening Brief pp. 6-7, 9:11-13.  Such an express determination may be more appropriately

13  substantiated in association with a ruling on the fraudulent transfer claim.   In any event, this

14  court need not and does not reach the equitable tolling issue in order to decide this appeal

15  on the purely legal question associated with perfection of title based on an essentially

16  undisputed chronology of events associated with the execution of the Quitclaim Deed, the

17  filing of Chapter 7 bankruptcy, and subsequent recordation of the Quitclaim Deed.

18

### D.    Credibility Issue

19       The Daigles argue the Bankruptcy Court relied on an implied finding regarding their

20  credibility in reaching its decision to summarily adjudicate the Real Property transfer issue

21  in favor of  the Trustee, an impermissible consideration in a summary judgment proceeding.

22  *See* Anderson, 477 U.S. at 249.  The court finds that argument is without merit  The

23  Bankruptcy Court does not appear to this court to have *relied on* a credibility finding to

24  decide the legal effect of the recordation timing.[19]  This court rejects their attempt to insert

25

26     [19]    The transcript of the December 19, 2007 hearing of the summary judgment motion
reflects just one allusion to the court's  opinion on that point, and cannot be fairly read in context as
27  the grounds for the result under review here.  In response to the Trustee's counsel's closing remarks
that "the question is whether or not [the transfer] is an avoidable post-petition transfer [, **a] [l]egal
28  question**," the court observed: "Well, I think from the court's point of view, that what the debtor and
spouse did is a clear example of someone deliberately trying to keep interest, potentially valuable

1  a state of mind element into the Bankruptcy Court's determination the issue presented by

2  this appeal then to impute impermissible findings to the Bankruptcy Court.[20]  Even if the

3  Bankruptcy Court considered the Daigles' credibility in granting summary adjudication of the

4  issue presented in this appeal,  reviewing court may affirm the ruling on any ground

5  supported by the record.  In re Olson, 36 F.3d 711, 73 (9th Cir. 1994).  This court affirms the

6  result as a matter of law under the recordation statutes.

7  **III.    CONCLUSION AND ORDER**

8          For all the foregoing reasons, **IT IS HEREBY ORDERED** the Order of the Bankruptcy

9  Court granting summary adjudication for the Trustee on the issue of an unauthorized post-

10  petition transfer of the Debtor's interest in the Real Property is **<u>AFFIRMED</u>**.

11          **IT IS SO ORDERED**.

12  DATED:  July 11, 2008

13

14  **HONORABLE LARRY ALAN BURNS**
    United States District Judge

15

16

17

18

19

20  interest, out of the hands of the bankruptcy estate.  And I think that **on this record** [*i.e.,* not because
    the court was relying on that impression of the Daigles' intent], the court should grant summary

21  judgment."  Appellee's Brief Exh. I 19:13-20:1 (emphasis added).  For purposes of this appeal, the
    court was not deciding the fraudulent transfer claim, but only as a matter of law whether the transfer

22  of the Debtor's interest occurred post-petition.  The court's passing observation, construed by the
    Daigles as an impermissible credibility finding, was gratuitous and has no bearing on the result: "The

23  intent of the parties effecting the transfer is irrelevant under § 549 [governing post-petition
    transactions]. . . [and] fraud is not an element for a cause of action by the Trustee under § 549."  In
    re Dreiling, 233 B.R. 848. 876 (Bankr. D.Col. 1999).

24

25          [20]  "This case has been decided by a Bankruptcy Court in a Summary Judgment Motion.  The
    legal and real effect of the decision of the bankruptcy court is to tell defendant what he did at what
    point and with what frame of mind.  Defendant contends that those events did not happen in the way

26  that Plaintiff asserts."  Reply 3:24-4:1.  The court disagrees with that characterization of the grounds
    of the issue appealed.  This court affirms the result on grounds unrelated to any state of mind or

27  credibility or disputed material fact.  The question of fraudulent transfer is not now before the court.
    This appeal is associated only with the execution and recording of the Quitclaim Deed as those

28  events inform the satisfaction of 11 U.S.C. § 549 avoidance elements and is decided by applying
    controlling legal authority to a chronology of material facts undisputed for purposes of the Motion.